IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORILLARD TOBACCO COMPANY, a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) Civil Action No. |
| v. | ) Judge 03C 5833 ) |
| A & E OIL, INC., d/b/a MOBIL, | ) Magistrate Judge JUDGE HART ) |
| Defendant. | ) MAGISTRATE JUDGE MASON ) JURY DEMANDED ) |

[FILED UNDER SEAL]

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATIONS FOR *EX PARTE* SEIZURE ORDER, TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, ORDER SEALING FILE, AND ORDER EXPEDITING DISCOVERY**

I.  **INTRODUCTION**

Plaintiff Lorillard Tobacco Company ("Lorillard") is one of the leading cigarette manufacturers in the United States. Lorillard's best selling brand, NEWPORT®, is the best selling menthol cigarette in the United States. Lorillard has registered its trademark NEWPORT® with the United States Patent and Trademark Office, giving Lorillard the exclusive right to manufacture, distribute, advertise and sell NEWPORT® cigarettes in the United States.

Defendant A & E OIL, INC., d/b/a MOBIL, ("Defendant"), and perhaps other associated individuals and business organizations, are selling unauthorized and illicit cigarettes that bear counterfeit imitations of the trademarks and trade dress of authentic NEWPORT® cigarettes. The counterfeit cigarettes are being passed off by Defendant as genuine NEWPORT® cigarettes, although these illicit products have not been

manufactured, sold, or otherwise approved by Lorillard. Under the Lanham Act, Defendant's products are counterfeits.

As provided by the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), and consistent with the relief ordered by many courts in similar cases, Lorillard applies to this Court for an *ex parte* seizure order to ensure that all evidence of Defendant's counterfeiting activities be preserved. Lorillard also seeks a temporary restraining order so that Defendant are ordered immediately to cease and desist from all such counterfeiting and unlawful activities.

## II. THE PARTIES AND THE NEED FOR IMMEDIATE RELIEF
### A. Lorillard

Lorillard is one of the top sellers of premium cigarettes in the United States. Lorillard's leading brand is NEWPORT®, which has become the number one menthol brand in the United States and the second most popular cigarette brand overall. Lorillard's cigarettes are manufactured in North Carolina in accordance with strict quality control standards. The cigarettes are then distributed throughout the country by a network of wholesalers and retailers, in compliance with a wide range of federal and state regulations.

In the past several years, the federal government and many states, including Illinois, have substantially increased taxes on cigarettes and other tobacco products. The revenue from these taxes has been directed to various smoking cessation programs, children's health initiatives, and other such purposes. The high level of taxation, however, has made it extremely profitable for bootleggers to import and sell cigarettes in a manner designed to evade paying the taxes that apply to everyone else.

Lorillard has obtained individual packages and/or cartons of counterfeit NEWPORT® cigarettes offered for sale by Defendant. Based on an inspection, (Declaration of R. Hamilton (Hamilton Decl. ¶ 4)), Lorillard has determined that the

2

subject cigarettes are counterfeit and were neither manufactured nor packaged by Lorillard (Declaration of Ed O'Brien (O'Brien ¶¶ 3-10)).

### B. Defendant

Defendant does business as a tobacco retailer, including selling the counterfeit Newport® cigarettes, in the City of Chicago, and has a place of business at 3642 West 79th Street, Chicago, Illinois.

### C. Urgency

Time is of the essence because of the ongoing trademark counterfeiting. Without an *ex parte* seizure order, there would be a substantial risk that products bearing counterfeit marks, documents, and other evidence of counterfeiting activities would be moved, destroyed, or otherwise rendered unavailable. It is imperative that all evidence of Defendant's sources of the counterfeit products be preserved. Cigarettes are small items and can be easily concealed and quickly moved. Further, without a temporary restraining order and preliminary injunction, Defendant would be permitted to continue infringing Lorillard's intellectual property rights, misleading consumers as to the source and sponsorship of Defendant's products, and diluting Lorillard's hard-earned consumer recognition and goodwill. Lorillard only seeks such orders as will immediately enjoin Defendant from further infringement and will preserve all possible evidence.

## III. LORILLARD'S TRADEMARK PROTECTION

### A. Trademarks Are Valuable Property.

A trademark is a distinctive mark adopted and used to distinguish goods of one source from those of another. A trademark can be a word, design, symbol, or object, and it allows a consumer to identify goods as coming from a particular source. *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 162, 131 L. Ed. 2d 248, 251, 115 S. Ct. 1300, 1302-1303 (1995). Trademark law embodies important policies, including (1) consumer protection (assisting a consumer to identify and obtain preferred goods from a consistent source and preventing confusion) and (2) property owner protection

(protecting the right of a merchant to profit from the goodwill associated with exclusive use of his or her trademark). Trademarks are protected by both state and federal law. While not required to be registered, registration gives the public notice of an owner's rights.

### B. Lorillard's Registered Trademarks

Lorillard and its predecessor entities have used the NEWPORT® trademark continuously since at least 1956. Lorillard incorporates its trademarks onto its cigarettes and the packaging to identify the source of the products. Among other marks, Lorillard and its affiliated entities hold federal registrations for the marks LORILLARD®, NEWPORT®, NEWPORT® (stylized), Spinnaker Design®, and NEWPORT and Design® with the following registration information:

| Trademark | Registration No. | Goods |
|---|---|---|
| LORILLARD® | 1,920,066 | Cigarettes |
| NEWPORT® | 1,108,876 | Cigarettes |
| NEWPORT® (stylized) | 2,600,870 | Cigarettes |
| Spinnaker Design® | 1,178,413 | Cigarettes |
| NEWPORT and Design® | 1,191,816 | Cigarettes |

### C. Lorillard Is Entitled To Broad Relief Against Counterfeiters.

The distinction between "counterfeit" and "colorable imitation" is significant; the law deals more harshly with, and provides a broader range of remedies for, counterfeiting. Among other things, to combat counterfeiting, Congress has seen fit to provide for *ex parte* seizure orders. 15 U.S.C. § 1116(d). A remedy that Lorillard seeks here.

A "counterfeit" is statutorily defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. In contrast, marks which are not "identical with" or "substantially indistinguishable from" a registered mark, but which nevertheless are "colorable imitations" of a registered or unregistered

4

mark so as to be likely to cause confusion, are considered infringing. Counterfeiting or infringement of a registered mark is made actionable by 15 U.S.C. § 1114(1), and infringement of an unregistered mark is made actionable by 15 U.S.C. § 1125(a). "Counterfeiting is 'hard core' or 'first degree' trademark infringement and is the most blatant and egregious form of 'passing off.'" 4 J. Thomas McCarthy, *McCarthy on Trademarks* § 25.10, at 25-17 (2002) ("*McCarthy*").

For purposes of the *ex parte* seizure provision of 15 U.S.C. § 1116(d) only, the definition of "counterfeit" is as follows:

> As used in this subsection the term "counterfeit mark" means (i) a counterfeit of a mark that is registered in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; ... but such term does not include any mark or designation used on or in connection with goods or services of which the manufacturer or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.

According to the legislative history, this provision was intended to exclude from the definition of "counterfeit" parallel imports, gray market goods, and production overruns by authorized licensees. Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12079 (Oct. 10, 1984).

The "Newport" brand cigarettes sold by Defendant, which are not genuine Lorillard products, are counterfeit under this definition, since they were manufactured and distributed wholly without authority of Lorillard; they are not merely production overruns or gray market goods. This is consistent with precedent. For example, in *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077 (D. Md. 1995), the court found that Microsoft trademarks used in connection with the sale of unauthorized copies of Microsoft software were "counterfeit." *Id.* at 1088, 1092. Hence, the unauthorized

5

"Newport" cigarettes sold by Defendant are counterfeit for purposes of 15 U.S.C. § 1116(d).

IV. **AN *EX PARTE* SEIZURE ORDER IS NECESSARY AND APPROPRIATE TO PRESERVE ALL EVIDENCE OF COUNTERFEITING ACTIVITIES.**

　A. **The Court Has The Power To Grant An *Ex Parte* Seizure Order Against Counterfeiters.**

In 1982 it was estimated that the cost of counterfeiting to U.S. businesses was about $5.5 billion per year. By 1996, that estimate had risen to $200 billion. Cong. Rec. H5778, June 4, 1994, Remarks of Cong. Moorehead, reprinted at 52 BNA PTCJ 184 (June 6, 1996), cited in 4 *McCarthy* § 25.10, at 25-18. *McCarthy* notes that prior to passage of the Trademark Counterfeiting Act of 1984, "traditional civil remedies proved largely ineffective against counterfeiters. The pirate or its distributor who is served with a civil summons to appear at a hearing on a preliminary injunction will either disappear or quickly dispose of existing inventory." 4 *McCarthy* § 25.10, at 25-19. Among other things, the 1984 Act created criminal penalties for counterfeiting (18 U.S.C. § 2320), provided for mandatory monetary remedies in counterfeiting cases (15 U.S.C. § 1117(b)), and granted the courts in civil cases the power to grant *ex parte* seizure orders (15 U.S.C. § 1116(d)). It is that last remedy, *ex parte* seizure, which Lorillard seeks here, in addition to the traditional temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65.

　B. **The Requirements For An *Ex Parte* Seizure Order Are Satisfied Here.**

15 U.S.C. § 1116(d) provides for an *ex parte* seizure order on eight enumerated conditions. Where the statutory elements are satisfied, it can be an abuse of discretion to deny an *ex parte* seizure order. *Vuitton v. White*, 945 F.2d 569, 575-76 (3rd Cir. 1991). The statutory elements are: (1) the person obtaining the order provides adequate security; (2) an order other than an *ex parte* seizure is not adequate to achieve the purposes of 15 U.S.C. § 1114; (3) the applicant has not publicized the

6

requested seizure; (4) the applicant is likely to succeed in showing the defendant used a counterfeit mark; (5) an immediate and irreparable injury will occur if such seizure is not ordered; (6) the matter to be seized will be located at the place identified in the application; (7) the harm to the applicant in denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered; and (8) if the applicant were to proceed on notice to the defendant, the defendant or persons acting in concert with defendant would destroy, move, hide, or otherwise make such matter inaccessible to the court.

Each of the statutory elements is satisfied here. First, Lorillard is willing to provide adequate security to protect Defendant against monetary loss in the event of a wrongful seizure. Lorillard suggests an amount of five hundred dollars ($500) would be more than adequate.

Second, an *ex parte* seizure order is necessary to achieve the purposes of 15 U.S.C. § 1114, i.e., to preserve to Lorillard its full remedies for trademark infringement, including destruction of merchandise bearing counterfeits of Lorillard's trademarks, and recovery of lost profits and damages. *See Hunting World, Inc. v. Reboans, Inc.*, 24 U.S.P.Q.2d 1844, 1845 (N.D. Cal. 1992).

Third, Lorillard has not publicized its application for an *ex parte* seizure. (Declaration of Richard D. Harris ("Harris Decl.") ¶ 4)

Fourth, as is described above, based on the Declaration of R. Hamilton and the Declaration of Ed O'Brien, Lorillard is likely to succeed in showing that Defendant has used counterfeit marks in connection with the sale, offering for sale, or distribution of cigarettes. (Hamilton Decl. ¶¶ 2-4; O'Brien Decl. ¶¶ 2-10)

Fifth, immediate and irreparable injury will occur if an *ex* parte seizure is not ordered. Indeed, in trademark infringement cases, and especially counterfeiting cases, irreparable injury is presumed. *See Abbot Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992); *Philip Morris v. Allen Distributors, Inc.*, 48 F.Supp.2d 844

7

(S.D. Ind. 1999). Lorillard has addressed the counterfeiting problem on a number of levels, for example, by implementing and enforcing company policies that withhold advertising and other assistance from any retailer found to sell counterfeit cigarettes. Even with these other efforts in place, the seizure remedy of 15 U.S.C. § 1116 is a key component of the fight against counterfeiting at the retail and distribution levels. *Ex parte* seizure is the single most effective means by which Lorillard can obtain possession of counterfeit products, determine through discovery the source of the counterfeit goods, and hopefully develop information about the distribution channels. *Ex parte* seizure also will help to deter retailers who might otherwise be tempted to profit by retailing counterfeit cigarettes. The seizure remedy is the premier tool in the very statute intended to put some teeth in anti-counterfeiting laws.

Sixth, it is reasonably certain that counterfeit "Newport" cigarettes, as well as any relevant documents, are located at Defendant's business located at 3642 West 79th Street in Chicago, Illinois.

Seventh, the harm to Lorillard if the requested *ex parte* seizure were denied would far outweigh the harm to any legitimate interests of Defendant from the granting of such an order.

Eighth, if Lorillard were to be required to proceed on notice, it would be a simple matter for Defendant to move, hide, or otherwise dispose of counterfeit cigarettes and any documents that relate to the purchase or sale of such cigarettes. The incentive for Defendant to hide or dispose of the products bearing counterfeit marks and to destroy relevant documents is especially great because trademark counterfeiting is a criminal offense (18 U.S.C. § 2320) and because the activities of Defendant or their suppliers in all likelihood involve other criminal offenses as well, such as illegal importation and tax evasion. Moreover, in similar trademark counterfeiting cases, Lorillard's counsel has noted that sellers of products bearing counterfeit or infringing marks tend to move or dispose of the accused products and relevant documents upon the giving of notice,

whether by cease and desist notice or by legal action. (Harris Decl. ¶ 2) Here, movement or destruction of the counterfeit products and documentary evidence would render prosecution of the case much more difficult and would frustrate the ultimate relief Lorillard seeks in this action. *See Matter of Vuitton et Fils, S.A.*, 606 F.2d 1, 4-5 (2nd Cir. 1979) ("If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action. This is precisely contrary to the normal and intended role of 'notice,' and it is surely not what the authors of the rule either anticipated or intended."); see also 130 Cong. Rec. H12076 (Oct. 10, 1984), quoted in *McCarthy* § 30.36, at 30-74 (Congress explained the tendency of "those who deal in counterfeits ... to destroy or transfer counterfeit merchandise when a day in court is on the horizon. The *ex parte* seizure procedure is intended to thwart this bad faith tactic, while ensuring ample procedural protections for persons against whom such orders are issued.").

Finally, Lorillard has notified the United States Attorney for the Northern District of Illinois of this application, pursuant to 15 U.S.C. § 1116(d)(2). (Harris Decl. ¶ 3) For all of these reasons, Lorillard's application for an *ex parte* seizure order should be granted.

## V. A TEMPORARY RESTRAINING ORDER IS NECESSARY TO PRESERVE EVIDENCE AND STOP DEFENDANT'S ONGOING INFRINGEMENT.

### A. The Court Should Issue A Temporary Restraining Order And Preliminary Injunction.

The purpose of a preliminary injunction is to preserve the status quo and to protect the rights of the parties pending a trial on the merits. Injunctions are specifically authorized in trademark and trade dress cases. 15 U.S.C. § 1116(a). In order to obtain a preliminary injunction, a plaintiff must show (1) some likelihood of succeeding on the merits, and (2) that there is no adequate remedy at law, resulting in irreparable harm if the preliminary injunction is denied. *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429,

9

1433 (7th Cir. 1986). The court must then consider the relative harm to the non-moving party, as well as the public's interest in the matter. *Lawson*, 782 F.2d at 1433. The court "weighs" these factors using a "sliding scale" approach, seeking to minimize the cost and risk of being mistaken. *Abbot*, 971 F.2d at 12.

### B. Lorillard Is Likely To Prevail On Its Trademark Claims.

As described below, Lorillard has proved (1) that it is the owner of protectable marks and (2) a likelihood of consumer confusion caused by the similarity of the marks. *Philip Morris*, 48 F.Supp.2d at 854. Lorillard is therefore likely to prevail on its trademark infringement claim.

#### 1. Lorillard Is The Owner Of Protectable Trademarks.

Actual use of a trademark, without more, establishes protectable trademark rights under the common law. 1 Jerome Gilson, *Trademark Protection and Practice* § 3.02(2), at 3-22 to 3-23 (1998); *Great Basin Brewing Co. v. Healdsburg Brewing Co.*, 44 U.S.P.Q.2d 1751, 1753 (D. Nev. 1997) ("[o]wnership of a trademark is established by use of the mark"). Lorillard's trademarks are protected at common law under 15 U.S.C. § 1125(a) and many of them have been registered with the United States Patent and Trademark Office, including, among others, the marks LORILLARD® and NEWPORT®. Lorillard's trademarks are arbitrary or suggestive in the context in which they are used and therefore are entitled to the broadest protection under the trademark laws. *Ocean Garden, Inc. v. Marktrade Co., Inc.*, 953 F.2d 500, 506 (9th Cir. 1991); *Nutri/System, Inc. v. Con Stan Industries, Inc.*, 809 F.2d 601, 605 (9th Cir. 1987).

#### 2. Defendant's Use Of Lorillard's Trademarks Is Likely To Cause Confusion Concerning The Origin Of The Goods.

The next required element of proof for a federal trademark infringement claim is that the sale of counterfeit products bearing Lorillard's registered marks is likely to cause confusion, or to cause mistake, or to deceive. 15 U.S.C. § 1114(1)(a). Indeed, the core element of trademark infringement is the likelihood of confusion, i.e., whether

10

the similarity of the marks is likely to confuse customers about the source of the products. *Matrix Essentials, Inc. v. Karol*, 1992 WL 142292, *5 (N.D. Ill.). "Likelihood of confusion exists when customers viewing the mark would probably assume that the product ... it represents is associated with the source of a different product ... identified by a similar mark." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837 (9th Cir. 1987) (citations omitted), and includes the likelihood consumers "would be likely to believe that the infringer's products had some connection with those of the registrant." *HMH Publishing Co., Inc. v. Brincat*, 504 F.2d 713, 717 n.7 (9th Cir.), *reh'g denied* (1974).

When the goods produced or sold by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348, 204 U.S.P.Q. 808 (9th Cir. 1979); *Official Airline Guides*, 6 F.3d at 1391. When the goods are related,[1] but not competitive, several other factors are added to the calculus. In the Seventh Circuit, the analysis of the likelihood of confusion issue rests upon consideration of the following factors:

(1) similarity of the marks;

(2) proximity of the goods;

(3) the area and manner of concurrent use;

(4) types of goods and degree of care likely to be exercised by the purchaser;

(5) the strength of the mark;

(6) evidence of actual confusion; and

(7) defendant's intent in selecting the mark.

---

[1] Related Goods are those "products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Sleekcraft*, 599 F.2d at 348 n.10, *quoting Standard Brands, Inc. v. Smidler*, 151 F.2d 34, 37 (CA 1 1945).

11

*CAE, Inc. v. Clean Air Engineering, Inc.,* 267 F.3d 660, 677-678 (7th Cir. 2001). Further, the test is flexible, and the relative importance of each factor is case-specific. *CAE,* 267 F.3d at 678. Moreover, the Court need not find in plaintiff's favor on each of these factors to support a finding of likelihood of confusion. Rather, the Court is to balance the various considerations. *Id.*

In the instant case, likelihood of confusion is easily established as Defendant's counterfeit cigarettes compete directly with Lorillard's cigarettes. Moreover, the relevant factors weigh in support of a finding that Defendant's use of Lorillard's trademarks on cigarettes creates a likelihood of consumer confusion.

    **a.    Lorillard's Trademarks And The Counterfeit Marks Are Identical In Appearance, Sound And Meaning.**

When analyzing two marks, courts determine whether the marks are similar in sight, sound, and meaning. *Sleekcraft,* 599 F.2d at 352. Defendant are using marks identical to the registered marks owned by Lorillard. There can be no question but that the counterfeit marks are similar in appearance, sound, and meaning to Lorillard's registered marks. Because the marks are identical, this factor weighs in favor of finding a likelihood of confusion. *CAE, Inc.* 267 F.3d at 678.

    **b.    The Goods In Question Are Identical.**

Both Lorillard and Defendant use the marks on cigarettes. A "strong possibility" that either party may expand his business to compete with the other will also weigh in favor of finding that the present use is infringing. *Sleekcraft,* 599 F.2d at 354. When goods are closely related, any expansion is likely to result in direct competition. *Id.* Here, Defendant's cigarettes and Lorillard's cigarettes are directly related, and therefore directly compete with each other.

### c. The Marketing Channels Are Similar.

Both Lorillard and Defendant ultimately sell their cigarettes to consumers in the United States. Indeed, Defendant apparently sell legitimate cigarettes along with the counterfeit cigarettes at issue.

### d. Types Of Goods And Degree Of Care Likely To Be Exercised By The Purchaser.

The standard for evaluating this factor is the "typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353; *Official Airline Guides*, 6 F.3d at 1393. Courts presume that buyers purchasing inexpensive products are likely to exercise less care than those buying expensive goods, "thus making confusion more likely" in the case of less expensive goods. *Brookfield Comms. V. West Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999). Here, cigarettes are relatively inexpensive products, thus confusion is likely.

### e. Lorillard's Trademarks Are Strong.

Generally, the stronger a mark, the more trademark protection it receives. *Reed-Union Corp. v. Turtle Wax, Inc.*, 869 F.Supp. 1304, 1307 (N.D. Ill. 1994). Strong marks are those which are fanciful, arbitrary, or suggestive. *Reed-Union Corp.*, 869 F.Supp. at 1307-1308. Weakness of a trademark would be shown by demonstrating that the mark is meaningful in common usage or merely descriptive. *Id.* at 1308. Trademarks may be strengthened by advertising, length of time in business, public recognition, and uniqueness. *Ocean Garden*, 953 F.2d at 506.

Lorillard's trademarks are extremely strong. NEWPORT® is a well known mark used continuously since the 1950's and has been developed into the most popular brand of menthol cigarettes in the United States. The LORILLARD®, NEWPORT® and other marks are used in a fictitious, arbitrary manner and in no way describe the cigarettes. Lorillard's trademarks do not directly convey any descriptive information about cigarettes other than the consistent quality and goodwill associated with Lorillard

through its trademarks. Defendant cannot possibly argue they need to employ Lorillard's trademarks to describe the Defendant's cigarettes.

Lorillard has deliberately strengthened its trademarks by advertising and marketing. Lorillard has committed substantial time, money, and creativity to develop the consumer awareness and goodwill associated with its trademarks. For example, Lorillard spends millions of dollars per year in marketing and promotional activities for the NEWPORT® brand. (Declaration of Victor Lindsley ¶ 4) Lorillard's marketing and advertising activities have included magazines and other print media, point of sale advertising, point of sale displays, and direct mail to consumers. (*Id.*)

### f. Actual Confusion

Confusion is most likely where, as here, the defendant uses a counterfeit mark. *See Microsoft Corp. v. CMOS Tech*, 872 F. Supp. 1329, 1335 (D.N.J. 1994) ("It would be difficult to imagine a clearer case of consumer confusion than the instant case in which the Defendant, acting in direct competition with the plaintiff, sold counterfeit products on which plaintiff's registered marks appear in their entirety. Under these circumstances, the likelihood of consumer confusion is clear.").

### g. Defendant's Adoption Of Marks Identical Or Confusingly Similar To Lorillard's Was Intentional And Deliberate.

When one party knowingly adopts a mark similar to another's, it is presumed that the defendant will accomplish its purpose and that the public will be deceived. *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 466 (4th Cir.), *cert. denied*, 519 U.S. 976, 136 L. Ed. 2d 325, 117 S. Ct. 412 (1996) ("We presume that the person who sets out to infringe on another's trademark has more brains than scruples, and will likely succeed."). There are innumerable designs and trademarks which could be used on cigarettes to identify their source or to create a

brand identity. Defendant has no need to counterfeit Lorillard's trademarks other than Defendant's desire to exploit those marks and suggest an association or affiliation between Lorillard and Defendant's products. This supports a finding of likelihood of confusion.

### C. Lorillard Will Be Irreparably Harmed Absent The Issuance Of A Temporary Restraining Order And Preliminary Injunction.

A prima facie showing of trademark infringement establishes the presumption that the trademark owner has suffered irreparable harm for purposes of a preliminary injunction motion. *Abbot Laboratories*, 971 F.2d at 16 (7th Cir. 1992); *Philip Morris*, 48 F.Supp.2d 844 (S.D. Ind. 1999). A preliminary injunction is further supported by the difficulty in proving damages resulting from trademark infringement and dilution. *Hyatt Corp. v. Hyatt Legal Services*, 736 F.2d 1153, 1158 (7th Cir. 1984). Injunctive relief is the remedy of choice for trademark infringement cases, as well as unfair competition cases. Broad injunctions are especially appropriate when the infringing trademark use is on similar goods or services. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1181 (9th Cir. 1988) (*citing Citibank, N.A. v. City Bank of San Francisco*, 206 U.S.P.Q. 997, 1009 (N.D. Cal. 1980)). Irreparable harm also results from the difficulty of computing lost sales and, generally, plaintiff's lack of control over what members of the consuming public are likely to perceive to be plaintiff's goods. *Rent-A-Center v. Canyon Television & Appliance Rental, Inc.* 944 F.2d 597, 603 (9th Cir. 1991); *Great Basin*, 44 U.S.P.Q.2d at 1756.

### D. The Balance Of Hardships Weighs In Lorillard's Favor.

Where irreparable harm is demonstrated, the balance of hardships tips in favor of the plaintiff where the injunction would not require costly changes in existing operations. 3 Jerome Gilson, *Trademark Protection and Practice* § 8.07(1)[c], at 8-152 to 8-153 (1998). A defendant who knowingly infringes another's rights "cannot complain of harm that will befall it when properly forced to desist from its infringing activities." *Triad Sys.*

15

*Corp. v. Southeastern Express Co.*, 64 F.2d 1330, 1338 (9th Cir. 1995), *cert. denied*, 516 U.S. 1145, 134 L. Ed.2d 96, 116 S. Ct. 1015 (1996) (copyright). Here, the harm to Defendant from ceasing the sale or distribution of products with counterfeit and infringing trademarks and logos is minimal compared to the dilution of the substantial value and goodwill inherent in Lorillard's trademarks.

There is nothing to preclude Defendant from selling cigarettes that do not infringe Lorillard's rights. However, preventing Defendant from continuing their counterfeiting and infringing activities cannot be a compelling hardship. The balance of hardships weighs sharply in Lorillard's favor.

## VI. UNDER THE CIRCUMSTANCES OF THIS CASE, THE BOND SHOULD NOT EXCEED $500.

Lorillard seeks only to stop the infringement of its trademarks and to preserve evidence for trial. Lorillard does not seek to interfere with any legitimate business operations. Defendant may continue selling products which do not infringe on Lorillard's rights. Accordingly, the amount of the seizure and injunction bond together should be no greater than $500.

## VII. THE CIRCUMSTANCES OF THIS CASE WARRANT EXPEDITED DISCOVERY.

It is vital that Lorillard be able to trace the sources of the products bearing the counterfeit marks before the trail grows cold. It would be detrimental and prejudicial to delay discovery. Lorillard therefore requests that the Court permit discovery to begin immediately upon service of the Summons, Complaint, and any orders issued pursuant to the instant application.

## VIII. CONCLUSION

Based on the foregoing, Lorillard requests that the Court issue an *ex parte* seizure order under 15 U.S.C. § 1116(d), a temporary restraining order under Federal Rule of Civil Procedure 65, an order to show cause why a preliminary injunction should

not issue to enjoin further infringement of Lorillard's intellectual property rights, an order permitting expedited discovery, and an order sealing the court file.

_____
John S. Pacocha
Paul A. Haskins
Jeffrey G. Mote
Cameron M. Nelson
Attorneys for Plaintiff
Lorillard Tobacco Company

GREENBERG TRAURIG, P.C.
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
(312) 456-8400
(312) 456-8435 (fax)

Dated: August 15, 2003

\\chi-srv01\200368v01

17