IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LORILLARD TOBACCO COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03 C 5833 |
| | ) | |
| A & E OIL, INC., THOMAS | ) | |
| KURUVILLA, JOSE KURIAN, and | ) | HONORABLE CHARLES R. NORGLE |
| EMMANUEL JOSEPH, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Plaintiff's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the court grants Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND[1]

### A. Facts

This case arises out of the sale of counterfeit cigarettes at a gas station in Chicago, Illinois. Plaintiff Lorillard Tobacco Company ("Lorillard") is the nation's fourth largest tobacco company. Its leading brand of cigarettes is Newport, the second largest selling cigarette brand in the country, with 8 percent of the national market. In conjunction with its cigarette brands, Lorillard owns five trademark registrations issued by the United States Trademark Office. These

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1

trademarks are for: Newport (Reg. No. 1,108,876), Newport (stylized) (Reg. No. 2,600,870), Lorillard (Reg. No. 1,920,066), Spinnaker Design (Reg. No. 1,178,413), and Newport and Design (Reg. No. 1,191,816) (collectively, the "Lorillard Marks"). Lorillard applies each of these registered trademarks on each of its packs and cartons of cigarettes.

Defendant A&E Oil, Inc. ("A&E") is a gas station located at 3643 West 59th Street, in Chicago, Illinois. Defendants Thomas Kuruvilla ("Kuruvilla") and Emmanuel Joseph ("Joseph") are the principal shareholders of A&E. Jose Kurian ("Kurian") is Kuruvilla's brother, and worked at the gas station.

In 2003, Lorillard detected a rise of counterfeit cigarettes in the Chicago area. On August 12, 2003, in conjunction with this increase of counterfeit cigarettes, Lorillard sales representative Rosemary Hamilton ("Hamilton") visited A&E, and saw five cartons of Newports on the shelves with the other cigarette inventory that she suspected were counterfeit. Hamilton purchased six packs of Newports from the suspect cartons and sent them to Lorillard's corporate headquarters in order to verify if they were indeed counterfeit.

Ed O'Brien ("O'Brien"), Lorillard's Manager of Sales Planning, confirmed that the cigarettes Hamilton purchased at A&E were in fact counterfeit. O'Brien worked closely with Lorillard's Quality Control assurance programs for over two years. O'Brien found that the tear tab on the cigarette packs were the incorrect length, the date code on the packs and cartons were out of date, and the cigarette packs had been printed using a different printing method than that used for genuine Newport cigarettes.

On August 20, 2003, Lorillard obtained an *ex parte* seizure order, and on August 21, 2003, Lorillard executed the order on A&E's premises. During the search, Lorillard seized open

packs of counterfeit Newport cigarettes. According to Lorillard, the seized products bore the following indications that the cigarettes were counterfeit: a "1003/T" carton code, a "103T51" pack code, a crisp, clear "Lorillard" logo, where genuine packs bear only a blurry logo, and a shorter cellophane tear-tab that is present on genuine packs of Newport cigarettes. Through its investigation, Lorillard discovered that the tax stamps on the seized cigarettes were also counterfeit.[2] According to Lorillard, Kuruvilla examines the tax stamps on all of the cigarettes he sells. Kuruvilla stated that he has been doing so for several years.

Then, on July 11, 2003, Lorillard seized over 438 cases of counterfeit Newport cigarettes from a company called CanStar U.S.A/Cam-Kat, Inc. ("Cam-Kat"). The cigarettes found at Cam-Kat, as well as other Chicago-area retailers sued by Lorillard all bear the same signs of counterfeiting as the cigarettes found at A&E: the incorrect pack and carton codes, and incorrect logo images. The majority of these counterfeit cigarettes were directly traceable to Cam-Kat.

A&E worked with a company called U.S.A. Cigarettes/ U.S.A Cash and Carry. In 2003, A&E wrote several checks to U.S.A. Cigarettes. Several of the checks written by A&E, and payable to U.S.A. Cigarettes had the name "Amin Arba" ("Arba") written on the back. Arba is an alias used by Amin Umar ("Umar"), a Defendant in a consolidated case. Two other retailers in the Chicagoland area have identified Umar as a seller of counterfeit cigarettes, and phone records establish that Umar had spoken with the individual Defendants on more than one occasion. A&E denies ever knowing Umar, or purchasing cigarettes from U.S.A. Cigarettes.

---

[2]The record is unclear as to which cigarettes bore the counterfeit tax stamps, and which cigarettes had authentic Illinois Department of Revenue tax stamps. See Def.'s Stmt. of Mat. Facts, Ex. L, ¶ 12 ("Nearly all of the counterfeit cigarettes recovered by Lorillard bore genuine State of Illinois Tax stamps."); see also Def.'s Statement of Mat. Facts, ¶ 30, Ex. P. ("The tax stamps on the counterfeit cigarettes seized by Lorillard. . . are counterfeit.").

Furthermore, A&E cannot explain how Umar's name appears on the back of the checks written by A&E to U.S.A. Cigarettes. As a result of these investigations, Lorillard has filed over forty separate lawsuits against fifty defendants.

## B. Procedural History

Lorillard filed its initial Complaint on August 20, 2003, and its Amended Complaint on October 6, 2004. The six-count Amended Complaint alleges trademark infringement in violation of 15 U.S.C. § 1114(1); unfair competition, misleading representations, and trademark dilution in violation of 15 U.S.C. §§ 1125(a) and (c); violations of Illinois state trademark law, and common law unfair competition. On October 21, 2005, Lorillard filed its Motion for Summary Judgment. A&E Responded on November 11, 2005, and Lorillard filed its Reply on December 19, 2005. Lorillard's Motion for Summary Judgment is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Velez v. City of Chicago, 442 F.3d 1043, 1047 (7th Cir. 2006). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000); see also Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School, 278 F.3d 693, 699 (7th Cir. 2002). A motion for summary judgment is granted "if no reasonable jury could find for the non-moving party." Raymond v. Ameritech Corp., 442 F.3d 600, 608 (7th Cir. 2006).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d. 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

**B. A&E's Liability on Lorillard's Trademark Infringement Claims**

In order to prevail on its trademark infringement claims, Lorillard must establish that: (1) it has a protectable trademark, and (2) that defendants' misuse of the trademark creates a

5

likelihood of confusion among consumers. 15 U.S.C. § 1114(1)(a); 15 U.S.C. § 1125(a); Sullivan v. CBS Corp., 385 F.3d 772, 775-76 (7th Cir. 2004). The same analysis applies to Lorillard's unfair competition claim under the Lanham Act, see Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1115 (7th Cir. 1997), its unfair trade practice claims under the Illinois Uniform Deceptive Trade Practice Act, see D 56, Inc. v. Berry's Inc., 955 F. Supp. 908, 920 (N.D. Ill. 1997), the Illinois Consumer Fraud and Deceptive Practices Act, and the unfair competition claim under Illinois common law, see AHP Subsidiary Holding Co. v. Stuart Hale Co., 1 F.3d 611, 619 (7th Cir. 1993). Therefore, with respect to determination of other infringement claims, Counts II-VI share the same outcome as Count I.

### *1. Lorillard's Trademark is Protectable*

It is undisputed that Lorillard's five trademarks are registered. As a result, there is a presumption that the marks are valid and protectable. See 15 U.S.C. § 1115(a); Packman v. Chicago Tribune Co., 267 F.3d 638, 638 (7th Cir. 2001). Therefore, there is no genuine issue of material fact as to whether Lorillard possessed a valid trademark on its five cigarette brands.

### *2. Likelihood of Confusion*

In order for the court to determine whether a likelihood of confusion exists, the factors it must consider include: (1) similarity of the marks, (2) similarity of the products, (3) area and manner of concurrent use, (4) degree of care likely to be used by consumers, (5) strength of complaint's mark, (6) actual confusion, and (7) intent of alleged infringer to "palm off his product as that of another." Sullivan, 385 F.3d at 776 (citing Promatek Indus. Ltd. v. Equitrac Corp., 300 F.3d 808, 812 (7th Cir. 2002)). These factors are not a mechanical checklist, and "[t]he proper weight given to each . . . will vary from case to case." Eli Lilly & Co. v. Natural

Answers, Inc., 233 F.3d 456, 462 (7th Cir. 2000) (quoting Dorr-Oliver, Inc. v. Fluid-Quip, Inc., 94 F.3d 376, 381 (7th Cir. 1996)). The test is not whether the public would confuse the marks, but rather, whether the viewer of an allegedly infringing mark would be likely to associate the product with which it is connected with the source of products with which an earlier mark is connected. Nike, Inc. v. "Just Did It" Enterprises, 6 F.3d 1225, 1228–29 (7th Cir. 1993). This test is generally flexible; the factors are balanced against one another. CAE, Inc. v. Clean Air Engineering, Inc., 267 F.3d 660, 677-78 (7th Cir. 2001).

The first factor is satisfied because the marks on the counterfeit and authentic cigarettes are virtually identical. The logo images are the same, except for the clear and crisp images on the counterfeit cigarettes, and the tear tab at the top of the packaging is shorter on authentic packs. Such discrepancies are not readily noticeable to the untrained eye, and therefore counterfeit and authentic packs would appear the same to the average consumer. Hamilton, Lorillard's own sales representative, was unsure as to the authenticity of the cigarettes she purchased at A&E. She had to have O'Brien verify that they were in fact counterfeit. As a result, there is no question as to the similarity of the marks.

The second and third factors are easily met because the counterfeit trademarks are used in the same type of cigarettes as Lorillard's valid mark. See Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 899 (7th Cir. 2001) ("In assessing whether products are similar, the question is whether the products are the kind the public attributes to a single source."). Additionally, when the counterfeit cigarettes were seized, they had been placed on the same shelf at A&E, and displayed with other cartons of authentic Newport brand cigarettes.

The fourth factor, consumer care, does not play a significant role in this case. It is unlikely that consumers will exercise a great deal of caution in the selection of a pack of cigarettes. Rather, a purchaser of Newports usually asks generally, for a pack of Newports, and accepts whatever the clerk hands to him.

The fifth factor, strength of the protected trademark, favors Lorillard. Lorillard's five trademarks have been in use since the 1950s, and the Newport brand of cigarettes is the second biggest seller of cigarettes in the country. The sixth factor, actual confusion, is inevitable in this case. The intent of the sellers of these counterfeit cigarettes is to confuse the consumer into believing that the cigarettes sold at A&E are authentic Newport brand cigarettes. To the average person, the distinction between Lorillard's products and the counterfeit brands is virtually indistinguishable.

In terms of the seventh factor, the Defendants intended to 'palm off' the counterfeit cigarettes as authentic Newports, thereby selling the fake cigarettes at the same price as original Newports. The main purpose of selling counterfeit merchandise is to pass off the fake product as an original item.

## C. Damages

In cases "involving the use of a counterfeit mark . . . in connection with the sale. . . of goods, the plaintiff may elect, at any time before final judgment is rendered. . . to recover statutory damages. . . in the amount of. . . not less than $500 or more than $100,000.00 per counterfeit mark." 15 U.S.C. § 1117(c). "If the court finds the use of the counterfeit mark was willful" damages up to $1,000,000.00 per counterfeit mark may be awarded. Id. In order for Lorillard to recover statutory damages, A&E's liability is not dependant on whether or not A&E

was willful. Additionally, the court has discretion as to the amount of statutory damages it may award to Lorillard. See Martin v. City of Indianapolis, 192 F.3d 608, 614 (7th Cir. 1999). Therefore, the issue before the court is the specific amount damages to award Lorillard.

Lorillard has submitted evidence that demonstrates A&E knew it was selling counterfeit cigarettes. A&E had a relationship with Umar, a defendant in another case involving Lorillard, and a known supplier of counterfeit cigarettes. A&E denied ever knowing Umar, although Umar's name appears on several checks written by A&E. Furthermore, the individual Defendants in this case were less than forthcoming with Lorillard at the discovery stage of the litigation. Kuruvilla and Kurian both stalled Lorillard in efforts to obtain depositions of them, and only cooperated after they were held in default.

Most telling of A&E's intent to use a counterfeit mark is the presence of the counterfeit tax stamps on its cigarettes. Kuruvilla stated that he looks at thousands of cigarette packs each year. However, the tax stamps used on the counterfeit cigarette packages were so blatantly fake, that a person in Kuruvilla's position would be able to tell something was wrong with the stamps. The counterfeit stamps have a white film, while the film on the authentic tax stamps are translucent. Additionally the serial numbers on the counterfeit stamps are printed in solid black lettering, while the authentic tax stamps are shades of grey, and are in dot-matrix style lettering. These discrepancies should have been readily noticeable to Kuruvilla, who claims to have been familiar with such tax stamps.

Furthermore, A&E received at least one customer complaint about the quality of its Newports. At least one customer returned a pack of Newports to A&E, and told Kurian that "there was something wrong with the pack of cigarettes." Kurian took a different pack off the

shelf and after trying a cigarette, concluded that it was "terrible." Kurian told Kuruvilla about the customer complaint, yet Kuruvilla did not investigate the matter any further. As a result, Lorillard has submitted evidence that demonstrates that the individual Defendants ignored several warning signs, such as their association with Umar, that the Newports for sale at A&E might have been counterfeit. Coupled with Defendants' behavior at the discovery stage of the litigation, the court finds that there is sufficient evidence to establish that A&E, and the individual Defendants had knowledge that they were selling counterfeit cigarettes.

Therefore, the court enters an award in the amount of $10,000.00 per mark, for a total of $50,000.00. This amount is below the maximum award provided for by the statute, yet is reasonable and likely to serve as a deterrent for Defendants from engaging in any further illegal activity.

### III. CONCLUSION

For the foregoing reasons, the court grants Plaintiff's Motion for Summary Judgment, and awards $50,000.00 in statutory damages in favor of Plaintiff.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 5-16-06